Cite as 2020 Ark. App. 220

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-19-385

| | |
|---|---|
| JOSHUA DUGGAR | **Opinion Delivered:** April 8, 2020 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-18-668] |
| V. | |
| CITY OF SPRINGDALE, ARKANSAS, AND WASHINGTON COUNTY, ARKANSAS | HONORABLE DOUG MARTIN, JUDGE |
| APPELLEES | AFFIRMED AS MODIFIED |

**MEREDITH B. SWITZER, Judge**

Appellant Josh Duggar appeals the Washington County Circuit Court's dismissal of his complaint against appellees City of Springdale, Arkansas ("City"), and Washington County, Arkansas ("County"). On appeal, he argues the circuit court erred in dismissing his complaint because he pled sufficient facts upon which relief could be granted and because res judicata is not applicable. We agree res judicata is not applicable, but we affirm the dismissal of Duggar's complaint as modified.

I. *Procedural History*

In March 2018, Duggar filed a complaint against the City and County alleging that in May 2015 both entities had received requests pursuant to Arkansas Code Annotated sections 25-19-101 et. seq., the Arkansas Freedom of Information Act ("FOIA"), from a Little Rock law firm requesting copies of files and associated documents pertaining to him

and his parents, Michelle and Jim Bob Duggar. Duggar specifically alleged (1) that the FOIA request to the City was for an "incident report" filed by detective Darrell Hignite of the Springdale Police Department "on or before 2008," and the FOIA request to the County was for copies of files and associated documents pertaining to him and his parents; (2) that employees of the Springdale Police Department, under the direction of Springdale chief of police Kathy O'Kelley and on the legal advice of Springdale city attorney Ernest Cate, and employees of the Washington County Sheriff's Office, under the direction of enforcement major Rick Hoyt and county attorney Steve Zega, identified the reports responsive to the FOIA request as an offense report of a juvenile investigation dated December 7, 2006, involving incidents occurring three and a half years earlier; (3) that the investigations were initiated by a referral from an Arkansas State Police investigator; (4) that because the allegations arising from the December 7, 2006 investigation occurred within the jurisdiction of the City, the County turned over the bulk of the investigation to the City, specifically to Investigator Hignite; and (5) that the allegations resulted in Detective Hignite's filling out a Family in Need of Services ("FINS") affidavit for referral to the Washington County Juvenile Court. Duggar alleged that the City had a policy prohibiting the public release of records of juvenile investigations, as evidenced by the form provided by its records division containing the highlighted statement, "By law, juvenile arrest history is NOT available"; that the City failed to train its police department employees in its policy regarding the release of juvenile records; and that the County failed to train its officers and deputies in its policy reflected in state law regarding the release of juvenile records. Duggar alleged that because the records pertained to a juvenile investigation, and because Arkansas law prohibited the

2

public release of reports of juvenile investigations, all the names of the juveniles involved, with the exception of his, were redacted, but his parents' names, past and present addresses, and personal information about the family, including the age of Duggar's parents' youngest child, were not redacted, making the names of the juveniles whose names were redacted readily identifiable. Duggar stated he was born in 1988 but was a juvenile at the time of the incidents detailed in the 2006 report. He further alleged that at all relevant times, the Duggar family was the subject of a reality television show on The Learning Channel from which a certain level of local, national, and international celebrity was attributable to each and every member of the immediate family, including those named and unnamed in the report. Duggar alleged the City and County released the juvenile incident reports, and such reports were released for international publication in In Touch magazine. Duggar claimed he suffered the tort of outrage, three forms of invasion of privacy (intrusion upon seclusion, public disclosure of private facts, and false light), and a violation of the Arkansas Civil Rights Act of 1993 (ACRA).

The County answered and asserted the following affirmative defenses: punitive-damages immunity; tort immunity; statutory tort immunity; sovereign immunity; statutory vicarious liability/respondeat superior immunity; that Duggar was not a proper party to a tort action; justification; mootness; waiver, estoppel, and laches; all applicable defenses under Rules 8(c) and 12 of the Arkansas Rules of Civil Procedure; public-interest exception to privacy claims; any information released by the County was already public; failure to state a claim upon which relief can be granted; and all statute-of-limitations defenses applicable. The City answered and asserted the following affirmative defenses: Duggar had failed to state

3

a claim upon which relief can be granted; immunity from punitive damages; statutory tort immunity; all other applicable doctrines of immunity, including but not limited to sovereign immunity; violation of Arkansas Rule of Civil Procedure 10(d); the City was not a proper party for the tort claims in Duggar's complaint; justification; mootness; waiver, laches, estoppel, and unclean hands; all applicable defenses under Rules 8(c) and 12 of the Arkansas Rules of Civil Procedure; public-interest exception to privacy claims; any information disclosed was already public; all applicable statute-of-limitations defenses; comparative fault and superseding, intervening cause; and res judicata. The City asserted Duggar had filed a complaint containing substantially the same claims in the Federal District Court for the Western District of Arkansas, which the court dismissed in October 2017. The City attached a copy of the federal order dismissing Duggar's federal lawsuit to its answer as an exhibit.

On October 19, 2018, the City filed a motion for judgment on the pleadings alleging Duggar was estopped from bringing suit under the theories of res judicata and collateral estoppel; that he failed to plead facts sufficient to state claims for outrage or to support his invasion-of-privacy claims; and that he failed to establish a claim for municipal liability or to state a cause of action that the City deprived him of any constitutional rights under the ACRA. The City further alleged Duggar's entire complaint was based on the contents of two investigative reports, yet Duggar had failed to attach those two documents as required by Arkansas Rule of Civil Procedure Rule 10(d).

Duggar filed no response to the City's motion; rather, he filed a motion requesting additional time to file a response to the City's motion or, in the alternative, a preliminary hearing on the City's motion. On November 20, 2018, the circuit court entered an order

4

dismissing Duggar's case against the City with prejudice, finding that "[t]he time afforded by the Arkansas Rules of Civil Procedure for [Duggar] to respond has passed and [Duggar] has made no responsive filing."

On December 7, 2018, Duggar filed a motion to vacate the circuit court's November 20 order, arguing he was not required to respond to the City's motion to dismiss because it was raised as a defense; that the circuit court was not required to grant a motion solely because no response or brief was filed; and that motions for judgment on the pleadings were not favored.

On December 17, the County filed its own motion to dismiss and response to Duggar's motion to vacate the dismissal order, adopting and incorporating the arguments as set out in the City's motion to dismiss both affirmatively as its own motion to dismiss and in response to Duggar's motion to vacate the circuit court's earlier dismissal order, which the County requested be extended to include the claims against the County. The City responded to Duggar's motion to vacate, arguing it should be denied because it was untimely, and the allegations had no merit.

On March 28, the circuit court entered an order denying Duggar's motion to vacate the order dismissing the City from the lawsuit. The Court noted that the earlier order, although poorly drafted, was not entered as a result of Duggar's failure to respond to the City's motion to dismiss. Also on March 28, the circuit court, by entry of a separate order, granted the County's motion to dismiss Duggar's claims against it. Duggar filed a timely notice of appeal.

II. *Preliminary Issues*

Several procedural issues must be addressed prior to turning to the merits. The City contends that because Duggar failed to respond to the motion for judgment on the pleadings, he failed to preserve the following issues for appeal: Duggar's claim that the motion for judgment on the pleadings should be converted to a summary-judgment motion; the res judicata effect of a dismissal entered without prejudice; Duggar's failure to comply with Rule 10(d) of the Arkansas Rules of Civil Procedure; and his failure to adequately plead facts to support his outrage claim, his privacy claims, and his claim for a violation of the ACRA.

Duggar claims that because the City's and the County's res judicata arguments relied on a previous federal court order that was attached to the City's answer as an exhibit, the circuit court necessarily considered matters outside the pleadings, thus converting appellees' motions into motions for summary judgment. We disagree. In *Martin v. Equitable Life Assurance Society of the United States*, 344 Ark. 177, 40 S.W.3d 733 (2001), our supreme court held that a copy of a written instrument attached as an exhibit to a pleading is a part thereof and may be considered in a motion to dismiss as if it were part of the complaint. Therefore, the attachment of the federal court order as an exhibit to the City's answer is considered a part of the complaint and can be considered in a motion for judgment on the pleadings without converting the motion into one for summary judgment.

Furthermore, in *Garvan v. Potlatch Corp.*, 278 Ark. 414, 645 S.W.2d 957 (1983), our supreme court held that no response to defenses is required, citing Rules 7 and 8(d) of the

Arkansas Rules of Civil Procedure.[1]  As for res judicata, when the issues on appeal do not involve factual questions but rather the application of a legal doctrine such as res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law. *Winrock Grass Farm, Inc. v. Affiliated Real Estate Appraisers of Ark., Inc.*, 2010 Ark. App. 279, 373 S.W.3d 907.  With regard to the argument that Duggar's claims should be dismissed for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, the circuit court looks only to the pleadings, which were already before it.  We therefore hold that the res judicata and Rule 12(b)(6) issues are preserved for our review.

## III.  *Res Judicata*

As mentioned above, with regard to the application of res judicata, we simply determine whether the appellees were entitled to judgment as a matter of law. *Winrock Grass Farm*, *supra*.  When a complaint is dismissed on a question of law, this court conducts a de novo review; the circuit court's ruling is given no deference on appeal.  *Elsner v. Kalos Fin. Servs., Inc.*, 2012 Ark. App. 639.  In *Deer/Mt. Judea School District v. Kimbrell*, 2013 Ark. 393, at 11–12, 430 S.W.3d 29, 39 (citations omitted), our supreme court discussed res judicata:

> Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction."  Res judicata consists of two facets, one being issue preclusion and the other claim preclusion. The claim-preclusion aspect of res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2)

---

[1]Rule 7 of the Arkansas Rules of Civil Procedure concerns pleadings allowed to be filed and instructions on filing motions.  Rule 8(d) of the Arkansas Rules of Civil Procedure provides, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied, either generally or specifically, in the responsive pleading.  Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies.

Collateral estoppel, the issue-preclusion facet of res judicata, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the issue must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment.

Claim preclusion and issue preclusion are applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *D&T Pure Tr. v. DWB, Inc., LLC*, 2019 Ark. App. 122, 572 S.W.3d 451. Res judicata "does not bar a subsequent action where . . . a party was prohibited from asserting its claim." *Id*. at 7, 572 S.W.3d at 456 (citing *Coleman's Serv. Ctr. v. FDIC*, 55 Ark. App. 275, 295, 935 S.W.2d 289, 300 (1996)).

Duggar's federal lawsuit was dismissed without prejudice. He did not have a full and fair opportunity to litigate the issues in question, and therefore the application of res judicata was not proper. However, this does not end our inquiry—we must still determine whether the circuit court correctly dismissed Duggar's complaint on the basis of the City's and County's motions for judgment on the pleadings.

IV. *Motion for Judgment on the Pleadings*

A. Standard of Review

A motion for judgment on the pleadings is appropriate if the pleadings show on their face that there is no merit to the suit. *Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, 589 S.W.3d 350. When reviewing a grant of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Id.* The standard of review for granting a motion to dismiss is whether the circuit court abused its discretion. *Id.* An abuse of discretion is a high threshold requiring not only error in the circuit court's decision, but also a determination that the ruling was made improvidently, thoughtlessly, or without due consideration. *Id.*

B. Outrage

The tort of outrage—also known as the intentional infliction of emotional distress— subjects an actor to civil liability for committing extreme and outrageous behavior. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. To succeed on an outrage claim, a plaintiff must demonstrate four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 15, 473 S.W.3d at 60. The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed

9

by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id*. Merely describing conduct as outrageous does not make it so. *Id*. The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure in life." *Id*. at 6–7, 551 S.W.3d at 4 (citing *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).

In his complaint, Duggar alleges that the juvenile code and the Arkansas Child Maltreatment Act provide that juvenile records shall not be subject to disclosure under FOIA; that there is a public policy that juvenile records "should not follow individuals into adult life and the harmful consequences resulting from said disclosure"; that as a result of the disclosure of protected juvenile records, he has sustained damages; that such disclosure of protected juvenile records "relating to activities which occurred when [Duggar] was not in possession of the full faculties of personal discretion and discernment typically available to an adult" in violation of Arkansas law constitutes "willful, wanton, extreme and outrageous conduct"; and such conduct caused damage to Duggar in the form of severe emotional distress.

We hold that the circuit court correctly dismissed Duggar's outrage claim because he did not state facts sufficient to support his claim. Duggar makes no allegation that any person *intended* to inflict emotional distress upon him. Duggar also failed to allege how he suffered mental distress. Discomfort, upset, embarrassment, anxiety, loss of sleep, and depression do not meet the "mental distress" element of the tort of outrage. *Coombs v. J.B. Hunt Transport, Inc.*, 2012 Ark. App. 24, 388 S.W.3d 456. *See also Kiersey*, *supra*. Duggar does not even allege this type of mental distress; he simply asserts that the conduct caused him "severe emotional

10

distress." Again, merely alleging that conduct is outrageous does not make it so. *Holman, supra.* We affirm the circuit court's dismissal of Duggar's claim of outrage.

### C. Invasion of Privacy by Intrusion Upon Seclusion

Arkansas recognizes intrusion as one of the four actionable forms of invasion of privacy. *Pingatore v. Union Pac. R.R. Co.*, 2017 Ark. App. 459, 530 S.W.3d 372. To prove intrusion upon seclusion, a plaintiff must establish (1) that the plaintiff sustained damages; (2) that the defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object; (4) that the plaintiff conducted himself or herself in a manner consistent with an actual expectation of privacy; and (5) that the defendant's intrusion was the proximate cause of the plaintiff's damages. *Coombs*, 2012 Ark. App. 24, at 4–5, 388 S.W.3d at 460–61.

To support his claim for intrusion upon seclusion, Duggar alleged the City and County intentionally intruded upon his seclusion by releasing protected juvenile-investigation reports; they lacked the necessary legal authority, as well as the personal permission, invitation, or valid consent to release said records; such intrusion was of a kind that would be highly objectionable to a reasonable person; he "conducted himself and engaged in a public life consisting of appearance in a popular reality TV series, leadership in national political and civic organizations, public speaking, and otherwise in a manner consistent with his actual expectation of privacy"; he sustained damages in the form of

11

significant emotional distress, mental anguish, and substantial lost income; and the City's and County's intrusions were a proximate cause of his damages.

Duggar relies on Arkansas Code Annotated section 9-27-309(j) in arguing that the circuit court abused its discretion in dismissing his claim for intrusion upon seclusion. When the City and County released the records, in May 2015, that subsection provided:

> Records of the arrest of a juvenile, the detention of a juvenile, and the proceedings under this subchapter shall be confidential and shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq., unless:
>
> (1) Authorized by a written order of the juvenile division of circuit court;
>
> (2) the arrest or the proceedings under this subchapter result in the juvenile's being formally charged in the criminal division of circuit court for a felony; or
>
> (3) As allowed under the section or § 9-27-320.

Ark. Code Ann. § 9-27-309(j) (Supp. 2019).

But Duggar, born in 1988, was not a juvenile at the time of the investigation in December 2006, even though the conduct that was investigated allegedly occurred when Duggar was a juvenile.[2]  This section therefore does not protect the records at issue from disclosure.

Duggar also relies on the Child Maltreatment Act to support his claim for intrusion by seclusion.  Arkansas Code Annotated section 12-18-104(a) (Repl. 2016) provides:

> Any data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform

---

[2]Act 891 of 2017 modified Arkansas Code Annotated section 9-27-309(j) to insert "the records of an investigation that is conducted when the alleged offender is an adult and relates to an offense that occurred when the alleged offender was a juvenile" as another category of confidential records not subject to disclosure under FOIA—exactly the factual scenario we have here.

investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq.

Duggar's complaint fails to state a claim upon which relief can be granted in three respects. First, even if the records in question were protected from release under this statutory provision, Duggar failed to state facts showing that the City's and County's release of the records in contravention of the statute was intentional. This circuit court will not presume intent. It must be proved, and in the pleadings phase, it must be alleged to withstand a motion to dismiss under Rule 12(b)(6). At most, the allegations reflect that the City's and County's release of the records may have been negligent or the result of a misinterpretation of the law. But there are no allegations that anyone acted intentionally.

Second, Duggar failed to state facts as to how he conducted himself in a manner consistent with an actual expectation of privacy. Duggar stated in his complaint that he and his family were subjects of a reality television series "from which a certain level of celebrity locally, nationally, and internationally was attributable to each and every member of the immediate family." Finally, Duggar failed to state how he suffered damages. He makes a generalized statement that he was emotionally distressed, mentally anguished, and had "substantial lost income," which is not sufficient to support a claim for relief.

D. Invasion of Privacy by Public Disclosure of Private Facts

Public disclosure of private facts is publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true, and no action would lie for defamation. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, 454 S.W.3d 200. To succeed on this invasion-of-privacy claim, Duggar must prove the elements set forth in Arkansas Model

13

Jury Instruction 422, namely (1) that he sustained damages; (2) that appellees made a public disclosure of a fact about Duggar; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that appellees knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of Duggar's damages.

Duggar's claim must fail because he could not show that appellees publicly disclosed a private fact. Rule 10(d) of the Arkansas Rules of Civil Procedure pertains to forms of pleadings and states,

> Required Exhibits. A copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading.

Duggar did not attach the investigative reports upon which his complaint is based as exhibits to his complaint. Accordingly, there is no way to know what information was contained in the reports and whether they contained private facts. In the order dismissing the federal lawsuit, ?attached to its answer pursuant to Rule 10(d)?, the United State District Court found that Duggar had acknowledged in his complaint that *In Touch Weekly* had published a story about Duggar having been named in an underage sex probe before the City or the County made any records disclosures. If the information contained in the records was already disseminated or known to the public prior to the City's and County's releasing the records, then there was no public disclosure of a private fact. We are unable to determine whether the information contained in the records was private or known to the public

14

because Duggar did not attach the records pursuant to Rule 10(d). Duggar did not state a claim upon which relief can be granted; the circuit court's dismissal was therefore proper.

E. False-Light Invasion of Privacy

A false-light invasion–of–privacy claim has two essential elements: the complaining party must show (1) that the false light in which he was placed by the publicity would be highly offensive to a reasonable person and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of, the publicized matter and the false light in which the plaintiff would be placed. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. 549, 473 S.W.3d 60. The evidence must support the conclusion that the publisher had serious doubts about the truth of his publication. *Id*.

In his complaint, Duggar asserts the City and County "gave publicity" to records of a juvenile investigation that placed him before the public in the light of a sex offender when the juvenile records should have remained sealed; that he had a reasonable expectation pursuant to Arkansas Code Annotated sections 9-27-309 and 16-90-1417(b)(1) that the records were to be destroyed on his twenty-first birthday in accordance with state law, and he then "could attest for all future legal intents and purposes that the underlying conduct had never occurred, that said records did not exist, and that said facts were untrue." He claimed he was "seriously offended and aggrieved by the intensely negative publicity" by the illegal release of said records, and the release of the records and the resulting publicity "was a proximate cause of Plaintiff's damages including significant emotional distress, mental anguish and substantial lost income."

15

Arkansas Code Annotated section 16-90-1417 does not apply to the sealing of juvenile records. Ark. Code Ann. § 16-90-1403(b)(3). More importantly, though, Duggar does not allege that the information released was false, nor does he assert that the City or County knew the information released was false or that either had serious doubts about the truth of the information contained in the records. We affirm the circuit court's dismissal of this claim.

F. ACRA

Duggar alleged that the City's and County's release of the juvenile records under color of regulation, custom, or usage has deprived him of his rights to privacy and protection of his reputation under ACRA; that the City's and County's failure to properly train their personnel about state law and their own regulations, customs, and usages regarding the release of juvenile records evidences a deliberate indifference to those juveniles whose rights were to be protected; that even in the absence of written policy, the acts and edicts of City and County officials may fairly represent official policy of the City and County regarding the illegal release of juvenile records; that the records were highly personal in nature and the release of said records subjected Duggar to "shocking degradation" and "egregious humiliation"; and he has sustained damages and costs as a result of the public release of his juvenile records.

The ACRA imposes liability when state officials acting under the color of state law deprive persons of their rights under the Arkansas Constitution. *Harmon v. Payne*, 2020 Ark. 17, 592 S.W.3d 619. In construing the ACRA, we may be guided by state and federal decisions interpreting the federal Civil Rights Act, 42 U.S.C. § 1983. *Id.* Eighth Circuit law

16

interpreting the federal Civil Rights Act holds that municipal liability does not attach unless individual liability has first been found on an underlying substantive claim. *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 799 (8th Cir. 2013). Duggar did not allege there was any individual liability on an underlying constitutional violation; thus, there cannot be municipal liability. We affirm the circuit court's dismissal on this point.

IV. *Dismissal With or Without Prejudice*

Duggar argues that if the dismissal is affirmed, it should be without prejudice instead of with prejudice. Rule 41(b) of the Arkansas Rules of Civil Procedure, which addresses involuntary dismissals, provides in pertinent part, "A dismissal under this subdivision is without prejudice to a future action by the plaintiff unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits."

When a complaint is dismissed under Rule 12(b)(6) for failure to state facts upon which relief can be granted, the dismissal should be without prejudice. *Reed v. Smith*, 2018 Ark. App. 313, 551 S.W.3d 407. The plaintiff may then elect whether to plead further or appeal. *Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum (Fayetteville) LLC*, 2017 Ark. App. 201, 520 S.W.3d 277. If the plaintiff elects to appeal and the dismissal order is affirmed, the dismissal order is modified to reflect that it is a dismissal with prejudice because by appealing, plaintiff waives the right to plead further. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324. Our supreme court in *Malone v. Trans-States Lines*, 325 Ark. 383, 926 S.W.2d 659 (1996), modified the circuit court's dismissal with prejudice to one without prejudice

17

because by dismissing the complaint with prejudice, the appellant was not afforded the election to plead further or appeal.

All the claims presented in Duggar's state complaint, save for the ACRA claim, were previously dismissed in federal court and were dismissed without prejudice. Therefore, pursuant to Rule 41(b), these claims should be dismissed with prejudice because it is the second time the claims have been dismissed. However, this is the first time the ACRA claim has been dismissed. While it is true that Duggar elected to appeal the dismissal, like *Malone*, *supra*, Duggar was not afforded the opportunity to plead the ACRA claim further because the circuit court dismissed Duggar's complaint with prejudice. Therefore, as it pertains to the ACRA claim, the circuit court's order is modified to reflect that the dismissal is without prejudice.

Affirmed as modified.

HARRISON and VAUGHT, JJ., agree.

*The Story Law Firm, PLLC*, by: *Travis W. Story*, *Gregory F. Payne*, and *Katie L. Freeman*, for appellant.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by: *Thomas N. Kieklak* and *R. Justin Eichmann*; and *Kendall Law Firm, PLLC*, by: *Susan Keller Kendall*, for separate appellee City of Springdale, Arkansas.

*Jason Owens Law Firm, P.A.*, by: *Jason E. Owens*, for separate appellee Washington County, Arkansas.